Councilmember De Palma says you're ready, we'll be happy to hear from you. Judge Longford, may it please the court. Good morning, my name is Jed Rubenfeld. I'm representing the plaintiffs in this case. I'd like to reserve seven minutes of my time for rebuttal, if that's all right. Your Honors, the issue to be decided on appeal is actually a very narrow one, but if I could just take a moment to put the case in a broader context. The First Amendment question raised by this case is incredibly important for the whole country. That question is how far are government officials going to be allowed to go in their efforts to induce large internet platforms, Amazon in this case, to suppress constitutionally protected speech. Some lines are going to have to be drawn. I think everyone now agrees what those lines will be. That's going to be up to you, federal appellate judges, to tell us. But wherever you draw them, the need for some lines is one of the most important, most serious First Amendment issues, maybe the most, facing the courts at this time. Anyway, to come back to this case, I'd like to draw the court's attention, if I might, to two words. Potentially unlawful. Potentially unlawful. Senator Warren wrote a letter to Amazon naming certain books, including the plaintiff's book, The Truth About COVID-19, denouncing those books and warning Amazon, actually warning every bookseller in the country because that letter she published on her website the next day is still there, warning every bookstore in the country that selling those books is potentially unlawful. And with those words, her letter crosses a constitutional line. How do we know that those words were about selling this book instead of about selling masks that weren't as good as this one? Because it was in a sentence that is about masks as well. And they could have been about a mislabeling of masks. Well, the question is, how would a party in Amazon's position, a credit party in Amazon's position, reasonably construe the words potentially unlawful as referring to the selling of books? And I'll just quote the first sentence of that letter. I write regarding concerns that Amazon is peddling misinformation. Peddling misinformation. That's the first sentence. She definitely says they're peddling misinformation, but peddling misinformation isn't unlawful. So, I mean, I think when you try to figure out what would be the law that's violated here, mislabeling of some sort of mask, that might be unlawful. It's a little hard to imagine what the problem is with the books in terms of violating a law that they can actually worry about a criminal liability for. Or civil liability for that matter, any liability. I respectfully don't think that's true, given what her letter actually says. So she says that conspiracy theories about COVID-19 are contributing to untold illness and death. That's what she says. She says in the first letter, the first sentence of the letter, I write regarding concerns that Amazon is peddling misinformation. She will go on in the letter and say that that misinformation is causing untold illness and death. Then in the last sentence of that very first paragraph, she says this pattern and practice of misbehavior suggests that Amazon is either unwilling or unable to modify its business practices to prevent the spread of falsehoods, and now I'm skipping a few words, an unethical, unacceptable, and potentially unlawful course of action. Preventing the spread of falsehoods. The part you skip is the part that Judge Friedland is calling. Well, that's right. Let me read it. Let me read it in full. To prevent the spread of falsehoods or the sale of inappropriate products, an unethical, unacceptable, and potentially unlawful course of conduct. Let me ask you this. If that potentially unlawful course of action phrase were not in the letter, your position is everything's fine? The entire case turns on that phrase. Is that what your position is? In a way, the answer to that is yes. But, I mean, in the context of the letter as a whole, the letter as a whole says You started out by saying, you know, courts need to draw lines, and we do have lines. The line is between, you know, sort of threats and coercion versus persuasion. And if we take out that one phrase, I don't see anything in here, and I'm not even saying that with respect to that phrase I see a threat or coercion, but let's just put that aside. I just want to make sure. If we took that out, you would concede, I think, that this is on the persuasion side, right? Denunciation is not threatening. And pure denunciation would not be a threat of any kind. So I, as a public official, I can condemn your, let's say your Amazon, your behavior in the strongest terms. You know, it's reprehensible and ethical and acceptable, blah, blah, blah. But you're saying the line that I cross into coercion is when I interject some accusation of potentially unlawful. Of unlawfulness, yes, exactly. Case after case, Your Honor. Case after case. Cases such as Bantam Books have the Supreme Court, and cases like Backpage.com out of the Seventh Circuit. But Bantam Books, the Supreme Court made very clear that the, quote, unquote, threatener was doing a lot more than that, including involving law enforcement, the police, et cetera. The facts here are far different than Bantam Books. Well, are they, Your Honor? In both cases, the government official wrote a letter on official stationarity, naming certain books, denouncing those books, and saying to the recipient bookstores that those books are, selling those books are potentially unlawful, as I submit you can reasonably read that first paragraph to say. Now, there were other facts in Bantam Books, like, in some cases, police visits. Those facts are not present in Backpage.com, where you have a government official warning the recipient of a letter that helping carry a plaintiff's speech is potentially unlawful. Let me change the focus here for one second. This letter, an identical letter, would your claim be the same, essentially, if it had been written by any of the other 534 members of Congress? Let me back up for one second. I'll come to your question in one moment, I promise. You don't have to look at my math. The issue on this appeal is whether a serious First Amendment question has been presented. That's the issue. Now, it's my opinion that under Bantam Books, Senator Warren violated a clearly established right, but at a minimum, I think Bantam Books establishes the existence of a serious First Amendment question, entitling plaintiffs to a preliminary injunction, requiring that letter to be taken off our website until such time as a full record can be developed and the court can finally resolve these issues. Now, Senator Warren has a specific relationship to Amazon, and that's in the briefs, that's in the record below. She has repeatedly singled out Amazon and targeted Amazon. At the time she wrote this letter, she was trying to interfere with an $8 billion transaction that Amazon was trying to transact. It would be reasonable for a party in Amazon's position to be particularly worried that Senator Warren might have used what power she has, all the senatorial clout she has, to do something to interfere with Amazon's existence as a company under antitrust laws she had threatened to break them up. Couldn't the opposite be said, though? I mean, she was already doing all those things and had been, so why does this make any difference to what she's going to do to Amazon? Why does it make a difference? Well, you're asking the right question, but I would say that a party in Amazon's position could reasonably be worried, and this was exactly what Judge Posner said in the Backpage case, could reasonably be worried that she would use what authority she has, all the authority she has, to do other things to interfere with its profitable. And I would just add that that's a serious First Amendment question. Even if it's not proven, it's a serious question. But that is equally true even if we take out the potentially unlawful things. That's why I'm having trouble with your argument. Because to me, given if you're saying, well, it's all about Senator Warren and her position on Amazon, well, as Judge Bielans said, that's well known. She could, if she's denouncing your client or Amazon's conduct in the strongest possible terms, certainly in that scenario, one, if you're Amazon, you think, my goodness, this person has potentially a lot of power to make our lives miserable in these other areas. They're obviously unhappy with what we're doing here. It has nothing to do with the fact that she said potentially unlawful. And so that's why I'm just puzzled as to how this entire case rests on that one phrase. How does your argument pull together? Well, you're trying to break up the various pieces of the letter, and I'm trying to put them back together. But when you have a senator who says what you're doing is potentially unlawful, and therefore I could take action to have you investigated, I could call up somebody to prosecute you for this, I could call up the relevant governmental parties and try to include pressure, and I have done that to you before. I have called the FCC, I've called the FTC before and had them try to break you up under antitrust laws. And so one of the things the district court said in denying the preliminary injunction is plaintiffs are unlikely to successfully demonstrate that the booksellers reasonably perceived Defendant Warren's letter as a threat. What standard of review would we apply to that statement? Do we look at that for abuse of discretion since that really goes reasonable perception, strikes me as in the nature of a factual type finding, as opposed to here's what Bantam Books holds. I would say the district judge is applying the wrong legal standard there. This is not a case that's been, there's been no discovery, there's been no factual record on how Amazon took, we don't have the evidence about Amazon, we don't have discovery yet. But doesn't that court have to decide preliminary injunction based on what's before it, whatever evidence you present, whatever evidence the other side presents, but in general, except for legal issues, don't we review for abuse of discretion? Yes, of course, Your Honor, but so let me try to be more precise about the way in which I think she, the district judge, applied the wrong standard. So in the Zeeper case out of the Second Circuit, we quote and cite that case, the letter constituted a threat if it, and I'm quoting the Zeeper case, Second Circuit, it could have reasonably suggested, could have reasonably suggested, or as the district court said, we hadn't proven that Amazon did perceive it as a threat. We don't have evidence to any, we don't have access to any of the internal evidence from Amazon. Zeeper says if it could have reasonably suggested to someone in Amazon's or, you know, there might be legal consequences if Amazon failed to accede to her request. That's the right standard. That's the Zeeper standard. That raises a serious First Amendment question because of. Is that the Staten Island case or is that a different case? The Zeeper case. I'm so sorry. I should know. No, I should know as well. I should know better, but I don't. But that's the correct legal standard. If a party in Amazon's position could have reasonably interpreted it. If you say it's an action that the public official could initiate against the target, is that correct? No, sir. No, Your Honor. In both Bantam Books and Backpage, both cases where the court issued the injunction, the party writing the letter did not have the power to initiate the action himself, herself, themselves. That was true in Bantam. That was true in Backpage.com. Sheriff Dart had no authority. Let me put it in these terms. Let's say that she said the reference to potentially unlawful conduct was made explicit in terms of, and you poor Amazon, you could be subject to massive class actions by consumers all over the country. That's what I'm talking about when I say potentially unlawful. So it has nothing to do with any action she would take. You're saying that that is a threat that crosses the line into coercion. I just don't understand that. That's just somebody's opinion about what kind of legal exposure you're creating for yourself. And that may be all that she was implying here, right? That seems to me the most likely, because there's nothing that she herself could have done with respect to what she was accusing the company of doing. She didn't have any authority to initiate legal proceedings against them. No, she didn't. But neither did the defendants in Bantam Books or Sheriff Dart in the Backpage case. Let's assume it's just a reference to potential civil liability by private parties. I do think there has to be a warning of governmental imposition of power or sanction. And I do think that the implication that you, Amazon, I mean, are willfully participating in selling content that is causing untold illness and death, and may, as the letter goes on to say, be in violation of medical fraud laws because it's peddling goods. It's marketing goods that one of the authors, she says, is selling over his website. Those are allegations which, those wouldn't be just a class action. Those would be allegations that a governmental, whether federal or state agency or agent, could bring consequences against Amazon for. So let's separate out the masks and just talk about the books. So, I mean, the peddling goods, it could be other goods or medicines or something else. Let's just talk about the books. If we're just talking about the books and the theory is that the books are causing death, I'm having trouble separating that out from what happened in our American family versus the city of San Francisco case because the county and city of San Francisco had said, what happened to Matthew Shepard is in part due to the message being espoused by your groups. They actually said, your message is causing these lesbians to be attacked and killed. That is much more explicit than what this letter said. So I don't understand how you get past American family. Well, I would say respectfully, Your Honors, that it's the words potentially unlawful that make all the difference. In an American family, there was a very passionate, powerful denunciation, and this court held that denunciation is within the rights of state officials, governmental officials. They can do that. But when they say potentially unlawful, Judge Bennett, you were on the panel that decided the Twitter versus Baskin case, and the amended opinion on that just came down three weeks ago. And in its discussion of Bantam Books in that case, this court's most recent discussion of Bantam Books, what is the first and primary distinction that the court draws in that case? The court says, in that case, Bantam Books, there was an allegation that a law had been broken, and that's why Bantam doesn't apply here, says the Ninth Circuit. But it seems like your theory of the law that's broken is words that encourage violence, and I don't see how that's any different than American family, if that's the theory. Oh, I'm sorry. I was bringing attention again back to... Or words that encourage death, I guess, maybe not violence, but it's the same result. Well, I believe that if in American family that city resolution or communication had said, you are acting unlawfully or potentially unlawfully, you newspapers, by carrying that ad, that would have been the same case. That's the same case as Bantam Books, and that's the same case as Backpage. But the city council did not. They just denounced, and they expressed opinions, but they did not say, and you are potentially violating the law by carrying the advertisement in that case. And that's the difference. And what is the law that would be violated? In which case? In our case. Oh, well, being complicit, being knowingly complicit in causing death is either negligent or reckless homicide. If you know that you're selling material that unreasonably causes the risk of death and you continue selling it, you could potentially be prosecuted for negligent or reckless homicide. Those are serious crimes. That's exactly what happened in the case of Backpage.com. Sheriff Dark says, you are willfully participating in selling material that's helping to cause human trafficking. And he cites some statutes and says, and you might be breaking these laws. But the laws are like banking laws and finance laws and money laundering laws. I mean, that seems plausible. We have a very sophisticated entity here at Amazon. It's probably not going to think that whatever they say in books is going to be murder. Well, I don't know what they think, but I think I do know what the letter says. The letter says this material is causing untold illness and death. It is misinformation causing untold illness and death. You are selling it. I am advising you of that risk. And if you keep selling it, that's potentially unlawful. And to me, it's potentially unlawful because, in part, it could make you complicit in homicide, negligent, or reckless. It could also make you complicit in medical fraud. It could make you complicit. It doesn't say what law, but that doesn't make it better. It could make you complicit in peddling dangerous material through the mails. All those things are crimes that could be enforced by governmental authorities. And the fact that she doesn't specify makes her letter worse, more threatening, as courts have held. And we quote those cases in our brief. Okay. Well, that's it. Now it's your time for a bow. Thank you very much. The other side. Are we? Yes, okay. Okay. May it please the Court, Sarah Clark on behalf of Senator Warren in her official capacity. Plaintiffs have not shown that they meet any of the requirements to warrant the extraordinary remedy of a preliminary injunction. So, critically, they can't show that they have any likelihood of success because Senator Warren's letter to Amazon was not coercive. And I'd like to start with this Court's decision in American Family Association because I think it highlights why their theory of coercion just doesn't work. So, as Your Honor noted, the San Francisco Board of Supervisors directly connected the plaintiff's anti-GAA campaign to, quote, horrible crimes. They really drew a direct line to something that is unambiguously unlawful, not just potentially unlawful. They said you're contributing to these crimes. Yeah, so let me push back a little bit on the coercive aspect. This letter says, given the seriousness of this issue, I ask that you perform an immediate review and within 14 days provide a public report and a plan to modify these algorithms. So, isn't that coercive where you have a letter that says, I want you to act immediately, and I don't want you just to look. I want you to change what you're doing in combination with potentially unlawful. I mean, that may not go to some of the other aspects, but in terms of coercive, why isn't that paragraph, that sentence, immediately modified? Why isn't that coercive? So, it's not coercive because to have coercion, you need to have a threat of consequence coming from a refusal to engage in whatever the request in conduct is. So, here she asks, conduct this review, make a plan to modify, and answer my questions. She does not connect that request to any legal sanction. So, I mean, one, it's quite disconnected from the potentially unlawful words. And, of course, government officials are free to urge businesses to take actions. So, she's well within her rights, of course, to ask them to do this. And, you know, I think it's telling that, you know, Amazon responded to her questions and certainly did nothing to indicate that they were going to issue a plan to modify their algorithms or anything of that nature. And plaintiffs certainly haven't pled or introduced any evidence to suggest that Amazon, in fact, capitulated to that request. So, I think that underscores and really undermines any theory of coercion here, even though, of course, she had requests for Amazon in her letter. I'll just, you know, return to American Family Association. Obviously, plaintiffs are hanging their case on the words potentially unlawful, and I don't think that can be squared with this court's decision in American Family Association. And it certainly is unlike the Supreme Court's decision in Bantam Books, of course, where we had dozens of notices, police visits, express threats of prosecution, right? That's in a whole different world. And the suggestion that Bantam Books also said, you know, oh, well, these are potentially unlawful is quite an understatement, I think. What might include that phrase other than to raise the specter that there might be an or else lurking behind this if you don't do what I say? Well, as Your Honor noted earlier, the line is between convincing and coercion, right? So, Senator Warren is, again, well within her rights to convey to Amazon the seriousness of the problem, in her view, and to persuade them to take a different course of action. Right. So, unethical, that's pretty serious for any business that's at the scale of Amazon, doesn't want to be accused of engaging in unethical behavior, unacceptable, totally inappropriate. I mean, you could denounce in pretty strong terms, but why go to the potentially unlawful? I understand why they've focused in on that. It seems to me that it's quite problematic. I don't think this is an easy case for Senator Warren by any means, and I guess I'm just trying to figure out why do you think this is so far away from the line of crossing into the realm of coercion? Because there's no threat there connecting the sort of potential unlawfulness of some conduct of Amazon's. Again, there's not a direct line between selling or promoting the books and potential unlawfulness, even in that paragraph, because she's also talking about other issues with Amazon's algorithm. Plus, there's no kind of additional connection of if you don't do what I ask, I will take some action against you. So, there's no – But we know that from our cases, there doesn't have to be an explicit connection of if you don't do this, I will take the following actions that you're really going to be unhappy about, right? It doesn't have to be put in those explicit terms. It can be implicit, right? It could be, but I think that I would return to American Family Association. I think the plaintiffs there could have said the same thing. They could have argued, you know, well, you're not telling us that you're going to take action against us because our rhetoric is contributing to hate crimes, but of course that's what we're going to infer when you issue these public resolutions and letters condemning us. So, again, I think if that were sufficient, this kind of highly tenuous connection here, then presumably it should have been sufficient in American Family Association. What about – what's your view on the Second Circuit's line of cases? For whatever reason, that circuit seems to have had more opportunities to lean on trying to figure out where the line is. And I'm thinking of that billboard case. Yes. Boy, it would be a shame if anything were to happen to those billboards of yours. I mean, right, that was the kind of – I mean, it was very implied. I don't know if that case was rightly decided, but there's at least some suggestion that you don't have to be explicit at all to cross the line because people, sophisticated people, understand, oh, this person has a lot of power. They're making this kind of veiled threat that something bad might happen to me if I don't do what they say. So the Second Circuit does have, obviously, a line of cases in this field. The billboard case of Equity, I think, already is distinguishable, and I'm happy to speak on that. But I'll just briefly note first that I think the Second Circuit's decision in NRA versus ULA, which private counsel submitted in a 28-J letter, I think is very telling as to the state of the law in the Second Circuit right now. So, you know, it may be that Equity is sort of the outer reaches. And even there, of course, I think there was a more clear threat of economic consequences where you have the borough president of Staten Island talking about the sort of billboard company's economic interest in Staten Island and directing him to call his legal counsel. So I think it's distinguishable, but, you know, I think that we can look to NRA versus ULA to see, you know, what is the state of the law now? What do you think that case suggests? Do you think that the Second Circuit has moved away from this sort of very loose kind of implied threat standard? Yes, Your Honor. I think that is a fair reading of the NRA case. There we have a New York state official who was overseeing an investigation. So she actually had direct regulatory authority over the party that she was simultaneously persuading, Lloyd's. So she was overseeing an investigation and simultaneously calling for them and other financial services companies to break with the NRA. And the Second Circuit rejected a First Amendment claim there and said that plaintiffs hadn't weed out, hadn't shown that the New York state official had crossed the line into coercion. And so those facts, I think, are stronger than what we have here and I think speak to where the Second Circuit is right now on these issues. So when you're distinguishing Okwuiti, are you suggesting that it's because the bureau president had more direct authority over the billboards? I'm not sure I'm understanding, like, if this letter was from the Department of Justice, would that be different? What I'm saying, I think, is just, obviously, the specific circumstances of who's sending the letter, who's receiving the letter, are going to be relevant in every case. So there, we don't have sort of one out of 100 senators calling on a major public corporation that is well accustomed to receiving communications from that senator and from other people in Congress versus the kind of billboard company that you have in Staten Island and the sort of more, I think there's just a higher potential for coercion there. And, of course, again, I'm not taking a position on whether that decision was rightly decided and it's certainly not binding here. But I think even so, it doesn't provide the support to appointees that they need. I didn't understand Okwuiti to really explain what the bureau president could do, so I thought you might be here today telling us that we should say it was wrongly decided. It seems pretty vague what the threat there was, if there was a threat. I mean, this court doesn't need to say that it was wrongly decided, since, obviously, it's a different circuit's decision. I think its persuasive value has been further limited by, for example, NRA versus FULO. So I don't think it gets plaintiffs where they need to go, and it especially doesn't get plaintiffs where they need to go because they're here requesting a preliminary injunction. They're not just saying we should survive a motion to dismiss. They're asking for really extraordinary relief here, and they haven't made that clear showing that would be necessary. Can I ask whether you disagree with the legal standard that your opponent suggested that we adopt, which is that there needs to be, I think what he's saying is that there does need to be at least an implied threat that if the target of the letter or the communication doesn't respond in the way that the public official wants, that there will be some government investigation or prosecutorial action, some government enforcement effort. Are you in agreement with that, but you just say that the implication that that would occur is not strong enough from this letter, or do you have some different standard in mind? If I'm understanding correctly, I am in agreement. What matters is whether the government official is threatening to bring their power in some way to theirs. I agree that they don't need to have necessarily direct regulatory authority in that they don't need to be the prosecuting official, but they need to be saying I will do something if you don't agree with me. I think it's telling that really the vast majority of cases where there has been a violation or a potential violation, they are law enforcement people. They're the sheriff. They're the DA. So I think it's certainly still relevant and important, but I think I agree that what matters is what the government official sort of is supposedly threatening to do. But as Senator Warren here had been more explicit, I mean, your opponent says, well, it says potential law enforcement. It's ambiguous perhaps as to what set of laws she thinks might have been broken, but let's say she was quite explicit in saying that there was some federal criminal law that she thought was potentially broken by Amazon's conduct. And so the implication would be, obviously, as a senator, I can come to you all and put whatever pressure I can bear to see that some federal prosecutorial action is brought. That's enough, I assume, if it were that explicit. No, not necessarily, Your Honor. There I think still we have to take into consideration, Senator, what kind of authority or influence she actually would have to carry out that kind of threat. And also we have to take into account Amazon's position. So plaintiffs obviously take Amazon's history with regulators or with Senator Warren specifically as an indication that this should be more threatening. So your position is that, following up on Judge Watford's question, that if the letter had said, and if you don't change these algorithms, I'm going to be writing to Merrick Garland and asking him to take immediate action, that that wouldn't be enough? That certainly would be a much closer case, Your Honor. There's obviously nothing like that in this letter, and so this court doesn't need to kind of parse where the line would be if a congresswoman, for example, were to go much further than this letter and connect plaintiff's speech to some sort of threatened sanction. I think, again, still there it would be relevant whether Amazon would reasonably perceive that as a threat, given the parties' relative positions, but, again, that's obviously not this case. Well, yeah, it's not this case, but just because we're not dealing with – that's not like an implied threat. That's an explicit threat, right? There's no ambiguity there. If you don't do this, I am going to do this. I guess I'm just confused as to your answer. Why wouldn't that be enough? No senator has the ability to initiate a prosecution. The most that they could do is come to the Department of Justice, I guess, or maybe some state prosecuting office, right? But I guess I'm not clear on why isn't that – if the person is threatening to do exactly that, and I'm the recipient of this letter, why – I don't want to – maybe they'll be persuasive and get this person to bring action against me. Why would I take that chance? I think the better way to think about the question is, would that be coercive? So – and I'm suggesting that it's not necessarily clear that it would be coercive and that that is the critical question between whether it's actually bringing some sort of government coercive power to bear on the recipient of the letter. So that's why I'm hesitating to embrace in that hypothetical the idea that that would be enough, because it's not clear that that would be coercive to a business like Amazon, even to say – Is that because you think the Department of Justice wouldn't have a claim or a case? Or what is it that makes you say that it wouldn't be coercive? I think it would be the sort of – the lack of – I see my time is about to expire. I'll just briefly finish this question, if that's okay. The lack of a senator warrant to actually make the Department of Justice bring any sort of case. I mean, I agree that it's not at all clear what that case would be, but I am relying more on the sort of – she would just be persuading, I think, again. So it's more that she's one senator and doesn't really have the ability to control the Department of Justice. That's what you're relying on? I think that's right, again, in this sort of scenario that we're positing, where there is a more clear connection between – So if this letter was from Merrick Garland, would it be different? It may – I mean, I think the analysis would be different. I'm not saying necessarily that there would be a different outcome, but I think that would certainly be a salient consideration in terms of, like, who the letter sender is. That doesn't – I'll just briefly say, obviously, resolve many other deficiencies and plaintiffs' request for relief, but in that sort of question of just the First Amendment merits, that would be a relevant consideration, I think. Okay, all right. Thank you very much for your argument. The colleague is going to address us for five minutes on this side. Your Honor, it's William Stafford for Senator Warren in her individual capacity. I join fully in the points made by Ms. Clark for all the reasons that she has recounted  including the District Court did not abuse its discretion in finding that plaintiffs are unlikely to prevail in the merits of the First Amendment claim and that the other winter factors supported denial of their motion. I'd like to use my time today to address two points specific to the individual capacity claim. First and foremost, plaintiffs do not and cannot seek an injunction against Elizabeth Warren in her individual capacity. If Appellant's counsel confirms in his rebuttal that they are not seeking a preliminary injunction against the Senator in her individual capacity, that will address the issues that I'll be discussing. But the motion itself was styled. The motion was styled as one brought against the Senator only in her official capacity. So why do you think there's any ambiguity on that point? Why does he need to stand up here and say anything? I believe there's some ambiguity on that point because the District Court suggested in the first page of its order that the motion was brought against the Senator in her individual or official capacity or at least there could have been a line that was read that way. But it can't be brought against her in her individual capacity anyway. I would agree with that, Your Honor. I'm sorry. What's your second point? To visit beautiful Pasadena is always a worthwhile endeavor. What's the second point? So the second point, for a variety of reasons, obviously Bivens, et cetera, want to tell them. The second point is simply on the qualified immunity issue. It bleeds into the first point because you can't. There's no qualified immunity issue at play here. This is a preliminary injunction. So if Your Honors have no further questions in that regard, then I will not take more of your time. Very good. Thank you. Let's put three minutes on the clock for rebuttal, please. Thank you, Your Honors. First, I just wanted to stress the standard view on this appeal. In this case, it's have there been established serious questions going to the merits. The lawyers on the other side repeatedly referred to the likelihood of success. It's a fair phrase to use, but we know that the Ninth Circuit has two standards, likelihood of success and raising serious questions going to the merits. So that, I want to just emphasize, is the standard on this appeal, and that entitles us to a preliminary injunction if you so find. Since you raised that point, sorry, I'll make sure you have time to address your other points. But, you know, it's in this case a little bit different in the sense that there are competing First Amendment interests. Senator Warren certainly has a very compelling First Amendment interest in her own right to speak her views. And so once you get into the serious questions, then you have to show that really there's just kind of an overwhelming showing on the other factors. It seems to me here that's not clear at all, given that there are these competing interests. Well, this Court has held in a series of cases that as a matter of law, if there is a colorable First Amendment question or serious question going to the merits, First Amendment question, the other winter factors are established as a matter of law, and they're established as tipping sharply in plaintiff's favor if plaintiff has shown a serious question going to the merits. Right. In the scenario where there's not a competing First Amendment interest in its own right on the other side. Well, is there a competing? I take the question. It's a very important question. But I would say that Senator Warren, even if I hope you accept all of our arguments, is free to denounce. We are not intruding on her First Amendment rights. She's free to denounce. She can write a letter denouncing as much as she wants. What you can't do is threaten legal consequences or write something that is reasonably interpreted as threatening legal consequences. What you can't do is say, and it's potentially unlawful. She can denounce to her hearts. We are not trying to intrude on her First Amendment rights. As Judge Posner said, addressing this very argument in Backpage.com, he said, Sheriff Dart's First Amendment rights are not implicated here. He can say anything he wants as long as he doesn't use language that can reasonably be construed as a threat because that violates the First Amendment. First Amendment doesn't protect that. That violates the First Amendment. So that would be our position on that, Your Honors. Now, counsel has said that in Van Zandt books, there were police visits, follow-up letters. That's all true. Those don't exist here. But they didn't exist in Backpage.com either. They don't exist in NetVern. That's a Second Circuit case or the O'Kweedy case out of the Second Circuit. Nonetheless, explicit threats. And the Voolo case? In the Voolo case, that's the NRA case. That's just, the letter specifically says we're calling on you as an ethical matter, as an ethical business to do this. There's no, there may be, there's barely, there's some denunciation in the case, but there's not a hint of unlawfulness in what the other parties are doing. And that's the difference between Voolo and this case. And it's what makes this case the same or similar to Backpage and Van Zandt books. Now, of course, the Second Circuit cases don't bind this court. But our position is that's why this case raises such serious First Amendment questions. We don't think this court should decide these issues on these limited facts. Get the full fact. Allow us discovery. Let's see what Amazon actually, how they responded. Maybe they did take it as a threat. Maybe they diminished the advertising. Maybe they throttled or shadow banned it. I mean, don't, it's enough if this court finds that the Second Circuit cases, the Seventh Circuit case, Van Zandt books, under those cases there's a serious question here. Let's, and that means that her letter should be preliminarily retracted, shouldn't be on that website because of the reputational damage and because it's threatening every other bookstore in the country too. Counsel talks about how Amazon's a great big store and isn't going to be afraid, but how about all the other bookstores that can be put out of business if anybody comes after them and investigates them? In the Backpage case, there's just one letter, like in our case. No follow-up letters. No police visits. And, boy, as to explicitness of threat, net burn and equity. It's hinted at, the threat. There's no statement that what you're doing is potentially unlawful. There's no statement that you're potentially contributing willfully to untold illness and death. And I must admit that I am personally surprised at counsel's suggestion that an explicit statement by Senator Warner that I'm going to refer this to Merrick Garland would not trip the wire. If that is the government's position, if that's the position they're arguing for here, let me put it this way, if that doesn't raise a serious question for this court, I don't know what would. And so what we would ask this court to do is draw that line in this case. If a government official writes a letter warning stores, naming certain books, and saying you're selling those books, it's potentially unlawful, that raises a serious First Amendment question. That letter should be preliminarily enjoined until there's a full record discovery. And that's what we would ask this court to hold. Okay, very good. Thank you very much for your argument. The case does argue to submit it, and we are adjourned for this session. All rise. This court for this session is now adjourned.
judges: WATFORD, FRIEDLAND, BENNETT